317-0803, Camden Academy of Dance, Forte Arts Center, acted by Zachary Bullock v. Kevin Mark, accountant at Camden Academy. Counselor, please proceed. Good afternoon, Mayor. Please record, Counselor. This matter comes before the Court to certify questions from the 13th Judicial Circuit under Supreme Court Rule 308. And specifically, those certified questions deal with the meaning of a durational limit in an employee-restricted covenant agreement. But to set up the factual template for this appeal under certified questions is very straightforward and involves a very common type of contract litigation. Camden Academy entered into a restricted covenant agreement with its adult employee, Callie Marik, in 2013. There were several covenants contained in that agreement, two of which are pertinent to this appeal. They're found in paragraphs 3 and 4 of the agreement. One is what I'll call a market-based restricted covenant that prohibits Ms. Marik from competing with Pam's Academy within a 25-mile radius for a period of not less than five years. The second is a slightly narrower restricted covenant that also prohibits Ms. Marik from competing but only in regards to solicitation of associates of Pam's Academy, so parents, teachers, and other students of the Academy. And that applies for not less than three years. We filed a Section 2615 motion to dismiss on a number of grounds before the Supreme Court was denied. One of the grounds on which the appeal concerned the indefinite nature of the restrictions in paragraphs 3 and 4, and in particular the language that they applied for not less than five and three years. The crux of our appeal is that does the term or the phrase not less than five and three years actually mean five and three years? Because that's what the circuit court's June 28, 2017 order, which is Appendix 1, says. So the court actually, during the motion to dismiss phase of the case, ruled as to how to interpret those two clauses, and in particular the durational limit expressed in the agreement on those two clauses. The court also struck in that same order a separate restricted covenant in paragraph 7, which was a restricted covenant that was similar in scope, but it actually didn't have any kind of time limitation or suggestions to outline it whatsoever. So it's that order which is in play. The circuit court has certified the two questions before you. We feel that this is a matter of contract interpretation, the basic application of contract instruction principles. And the first principle that applies is the plain meaning of the agreement. In other words, does the term not less than five years mean five years? No. We feel like the standard should be to ask the average person on the street. The average person on the street would tell you, well, it could be more, but it certainly doesn't put a hard cap at five years. So under the plain meaning of the agreement, there is no limit stated for this restricted covenant. The second principle to apply is that the case law now lays well established that you have to give effect and meaning to all terms of the agreement. So those words must mean something. They can't mean nothing. And what the circuit court did here is find that they really need to be read out of the agreement. That's the only way to interpret the order. When the court interprets it by saying they mean five and three years respectively, in effect, the court has excised or struck those terms entirely from the agreement. And I'd like to emphasize, too, that restricted covenants in this particular context, not the sale of business, not an arms-length transaction, but an employment at-will situation, we have special rules that apply. Those rules mean that we need to strictly construe the agreement against the drafted party, the employer. We know from the case law, as I've said repeatedly, these are essentially contracts of adhesion, and we're going to resolve any ambiguities against the party that was in control of the document, the employer. They are the ones who drafted it. They know what they need to protect. And so we put a special burden on them to draft it in compliance with the law. Here, that wasn't done. There are other substantive problems with the agreements that we can address later on, but they're not an issue in this appeal. So it's not in compliance with the law because? Because there's no duration limit. Okay. So, and again, we have to start from the first principles, and the first principles are the rule of reason applies. The rule of reason is essentially the test that says a non-compete must be narrowly drafted to protect only the employers within the business interest. Time and again, courts have said you need to have geographic limits, you need to have temporal limits, and the reason it's kind of straightforward and intuitive is that how can you really assess whether a non-compete restraint satisfies the strict scrutiny rule without having any sort of durational limit at all? Now, there are many different types of industries within which non-competes are applied. A service business, for instance, you might be able to have a little bit longer. The customer relationships are long-term. A two- or three-year agreement might be just fine, whereas another industry, one year, may be stretched. But to have no limit at all is a problem. And so the courts, you know, we cite the House Division v. Hyann case in our brief, in which there was an unlimited non-compete in terms of time, and that was the court found that that was upheld. Well, is there any case that is upheld agreement that has no temporal limitation on it? No. We cited three or four in our brief where there were, and one of them was the Seventh Circuit, one was in the Northern District of Illinois, and a couple were in the Illinois appellant's work where there was no temporal limit. A couple of times, what's happened is that the circuit court has granted injunctive relief and said, well, under the facts and circumstances, I'm going to impose this restraint for two or three years because I think the activity is there. And so that went up first on the House Division case, which was the Supreme Court Justice Schaefer's opinion. He said, no, there was no time limit originally expressed in the agreement. And therefore, even when you can't, a court can't rewrite the agreement in the sense there. So, I mean, that would be a pretty simple case to decide. Correct. So the gist of those cases which we've cited is that you can't add a temporal limit when none is expressed. Right. And I don't think there's really any dispute that as a general principle, a durationally unlimited agreement is valid. I don't really think that's in dispute. The question is whether under this agreement. Well, what we're saying is does this agreement have a temporal limitation, correct? That's what we're saying here. That's the certified question I said. Right. I mean, that's what the judge says. The trial judge says it means three and five. So it does do that. And you're saying, no, it doesn't. And if we agree with you, then those provisions are void. It's a syllogism, really. If you agree with me, then there's no duration limit. And therefore, it's void. And therefore, the action can't be sustained. So let's argue the language now. Yeah. Because that's really the focus of this case. Why is not less than nothing, no duration? Because it's indefinite. So not less than can mean anything. It certainly could mean six. It could mean seven. It's the same. It's really a synonym. Looking at it, we know that it can't be in force and effect for less than five years. But we don't know how long it's going to be in force and effect. That's your argument. That's my argument. Let me give you an example. So let's take out the word not less than. Replace it with at least. It's really the same agreement. Now, the reason we don't allow that, there's a couple reasons. First, contract disruption principles. In any ambiguity, it has to be strictly construed against the draft agreement. Second, think about the amount of discretion that this would give to the employer to enforce beyond the emotional limit that at least appears in the text of the agreement. And that's the problem, is that when you're dealing with restrictive problems, planning for your job, if you're going to start your own business or go to a better job, potentially, you need to have some certainty and some clarity. Now, I grant you that non-compete agreements like this come in all shapes and sizes. Different industries have different restrictions, different time limits, different scope of who you can and can't talk to. That's fine. But we're talking about two very important principles, freedom of contract, freedom to compete. We need to reconcile that. And all we're asking is that we need clarity. So an employee should be able to know, without going through extensive litigation, what she can and cannot do. And so it is not too much to say. Now, this is part of an action that's being brought against your client, am I correct? Yes. We're doing what? So the allegation is that she left in 2016. That she did something in violation of the agreement with, in what time frame? Within, I believe, within a few months. Okay. Right now. All right. Okay. So then you put yourself in a counselor's place. Yes. So you put yourself in a counselor's place. Let's say there's no legal effect on that. Well, you're going to say there's no legal effect on that. You can do whatever you want to the day you let the door hit you. Right? Right. In other words, the agreement was void the moment it was signed because it's not an enforcement action. I have a common sense interpretation of the man on the street. Would the man on the street say you could do that if you have not less than five and not less than three years in an agreement? Would the man on the street say, well, you can just go ahead and solicit business or compete in violation of the other, quote, plain language three months after you leave? I believe the man on the street is not going to make the determination of what's reasonable under these circumstances. I'm asking that the man on the street should know what is the term five years. But originally you said the man on the street would not know what this means in terms of after five years or after three years. I think, though, the man on the street might know what it means two months before the five years and three years expires. But think about what we're talking about. You're saying that an employee has to have some certainty as to what she can and cannot do. And we know that there are many cases out there. Well, wouldn't she have certainty to know that within five years she's not to do this or within three years she's not to do this? Then it's up to her to challenge the agreement, right? Then it's up to her to say, well, I don't believe it's enforceable, so I'm going to risk it. And I'm going to challenge it in litigation. I'm going to file a declaratory judgment action. And now because of this lack of certainty that we have, she's got all these great arguments, but practically she can't really address them. And so she's handcuffed because of a drafting problem that was easily avoided. So we need to have certainty and clarity as to what's an appropriate way to interpret these agreements. And here we're just saying we're going to excuse the employer due to their mistake, which was a mistake that was really solely within its control. And we're going to say, we'll look past that, and we're going to rewrite the agreement in the context of litigation for its benefit. That flies in the face of all these contract construction rules that apply and that we as counselors have to advise our clients on. Well, let me ask you, could it be, and I think what Judge Holder just pointed out, is that maybe the contract is ambiguous in one way but not in another. For example, no person, I don't think a lawyer, could even look at this and say that, say, the three-year one, that you could compete after one year after termination. So it seems pretty clear that during the three- and five-year periods, there's nothing ambiguous about that, you can't compete there. What your, and I take it your position is, well, it doesn't matter because by virtue of the fact that it is ambiguous at the tail end, in other words, is it five years, is it six years, is it 20 years, is it a life and being in 21 years? And you're saying by virtue of that, the provision is just void. So, and it's void from ab initio. You're right, and really my argument depends on how you find that the agreement is void at the start. Because there are plenty of cases where you look at these hypotheticals and you say, well, the agreement was written a certain way. Let's say the agreement prohibits the employee from soliciting any customers within 250 miles of Tokyo. But the evidence reveals that really the employer only had a customer base in Will County. And that's what the employee was doing. He was going after that book of business locally. But there's plenty of cases that talk about, look, we need to look at the overall reasonableness of the agreement, and we're going to, in effect, excuse the breach because the contract did not comply with the rule of reason standard that the Supreme Court has set out. So I appreciate the hypothetical, but my position does depend on saying that the contract was indefinite and uncertain at the time it was signed. There are a lot of restrictive covenants dealing with dance studios. I've not seen one, but they do apply in many personal services businesses such as hair salons. There are a number of cases involving hair salons. I think that's an appropriate analogy for this one. If there are any further questions, I'll see you next time. Thank you. Thank you, Counselor. Counselor, you may proceed. Thank you. Please court. Good afternoon, Justice. My name is Zach Pollock. I represent the Panasonic Academy of Dance, a new business that I support here at our center. Counselor did a very good job of distilling what we're talking about here. It's essentially what the term not less than means and whether it does contain some sort of enforceable time period in the context of this agreement. I think it's important to note that the agreement actually says that the non-competition starts from a period of not less than three years from the date of termination of employment. So you have a beginning point, the termination of employment, an end point, the three years. That not less than just simplifies the dash in between. It doesn't provide any sort of authority for Pan's Dance to enforce that beyond that three years. And if you look at the case law, which isn't ideal, but the case law that actually deals with the not less than language, that's the kind of reason that it's universally employed. Let me ask you this, because I think maybe the problem with this not less than thing, so you've got the employer and the employee. So you get the employee to sign this not less than. And so now it's three years in one day. It's three years, but they look at that and the contract says, geez, I can't compete not less than, can I compete now? Gosh, I don't know. And if I do compete, I'm liable to get sued. And win, lose, or draw, it's going to cost me a fortune to go to court because my former employers got more money than I got and they could take me through the court. So by creating this ambiguity on the tail end, you put the employee through, cause them some consternation after the three and five years. Well, can I do it now? And some of them may have the resource to go get a lawyer and some may not. So I'm going to be safe rather than sorry. I'm not going to compete because I don't want to be having a higher lawyer or going down to the circuit court and defending myself because, you know, six years is not less than five, so maybe I can't compete for six or seven. And is there a public policy against that type of maneuvering? Public policy, I'll concede that in non-competent cases, it's pretty unfavorable in non-competent cases. When there's ambiguities, you do resolve them in favor of the employee. However, in this case, I don't think there's an ambiguity that the employee would have to worry about. And I think the cases that we cited that address what that not less than language enforces are a reading of it that says that not less than just gets you up to that point. There's no actual common sense reading of it that would get you beyond it. Beyond three. Beyond three or five would be geographic restriction, yes. And so your position is, is you can screw that against the drafter, and so not less than three years means three years, and not less than five years means five years. And my position is that it's unambiguous that that language has to be. Well, humor me for just a second. I suppose it is. And then your opponent's position is, because of the not less than language is on its face, there is no end point to this because, like I said, it would give you a heartache and take you back to the rule against perpetuities in law school. You know, a life and being in 21 years, it could go on forever. And so he's saying because on its face it doesn't contain an end period, it's just void. You avoid it. You don't. So. No, I understand. I understand his argument perfectly. If you read this and you find it's ambiguous and you find that there's no term, it's unenforceable. It's pretty clear that the law says that non-compete agreements with no term, they're unenforceable. How clear is the law about the language? Because that's really what we're focusing on. The language regarding the law, there's a couple cases from Georgia that address it. There's a case from Illinois that doesn't address it in the context of an employment agreement. It addresses it actually in a municipal contract. That's Latham v. Wilmette. It's from a long time ago. The late 1800s. That's when law was much more clear. Yes. Okay. And it's got an appellate court case. Supreme Court case. Okay. And in that case, they're talking about the construction contract required a bed of sand not less than seven inches and then an additional one inch of cover. And the contractors doing the work actually wants to be discussed. They said, we don't have to do the full inch because the bed not less than, it's infinite. It provides no end point for how much we have to put on top of that seven inches. Supreme Court actually said that. Where was this? In Chicago? It's Wilmette, I believe. Oh, that's like a contractor's dream. They could put 12 inches, 15 inches and charge it in the municipality. Apparently they didn't want to go that way. The first certified question, and I'm not sure if I understand it, and what the point of this question is. You know, the second one is clear. You know, in the context of the government, does not less than five and not less than three mean five and three? But the first one says do employment-based restrictive covenants with time periods lasting not less than five and not less than three years contain an enforceable and reasonable temporal scope under prairie rheumatology and yada, yada, yada. Is this the same, is this kind of the same question or are they asking, is this the converse of the other question and saying does not less than contain an enforceable and reasonable temporal scope? Because if it's just asking if three and five years are reasonable, well, we can't answer that question because it's fact-dependent and they're different. Some fact situations and employment situations, three and five years might be reasonable and enforceable and others they aren't. But if this is going to, does this not, and it's in quotes, the not less than language, is that what we're really talking about here? And in other words, does the not less than language render the temporal scope indefinite? Is that the point of that question? I think that's pointing the question. It's kind of a two-part analysis. If not less than five years means forever, then I think that's kind of what the second question asks. Does that, is that what it means? In your interpretation of this contract, what could the defendant do after three years? Defendant, after three years of interpretation, that's at least a solicitation and direct compete clause. She could compete and solicit after three years. The second five-year provision that has a geographic limitation of 25 miles, I think after five years, she can move within that 25-mile radius. So after three, she could go outside the 25 miles and compete? Correct. Before three, she couldn't compete at all? Yes. But she can compete at, but unless it was 30 miles away, she couldn't compete? I believe there's no competition for three years, and then from that three- to five-year period, she just has to stay 25 miles away while competing. Well, how do you do no competition? So she couldn't go to Vermont to compete within three years? I believe it's, under your interpretation, reading the contract. Give me a second, please. So the clause is, It is further agreed that as a condition of employment and or continued employment of Pam's family of dance, the undersigned will not solicit or do business with any of the teachers, students, and or parents of Pam's family of dance during a two-year period to the termination of employment, or a period of not less than three years from the date of termination of employment. For whatever reason, notwithstanding, the undersigned may be engaged either directly or indirectly in a similar business with a 25-mile location. So she can go somewhere else outside the 25-mile limit right away, as long as she's not soliciting the clients that she met at Pam's dance. But the first question is asking whether those restrictions, if indeed were temporal restrictions, you're asking the reasonableness of which restrictions here, because I'm not sure I agree with your answer to Justice Schmidt about one and two. Two is pretty clear. You want to know whether these restrictive covenants are reasonable, right? That assumes that they're reasonable. Correct. Okay. That's not asking to interpret whether they're, I guess what I'm saying, that's assuming that they're not found to be, is it? Well, I didn't draft the questions. Okay. So.  You can go ask him. You can ask him about that. But I'm just saying that it seems to me that you're asking whether, okay, assume that these five and three years are upheld. Yes. Are they reasonable and enforceable time scopes, temporal scope, as it says, under those two cases? So can you address those two cases? For this kind of occupation. Yeah. As far as reasonableness? Yeah. You said under prairie rheumatology or reliable fire. Prairie rheumatology and reliable fire. I actually cite a case specifically on that issue as to whether those time constraints are reasonable. In my brief, it is. Now, under rheumatology, which sites reliable, it gives the analysis. Three part test. Okay. To determine if they're reasonable and geographic in time. Okay. Necessary to protect legitimate business interests. Right. And this is just a little background. This is a dance academy that is in Morris. There's also an office in Winnebago.  Winnebago. Yeah. I'm sorry, not Winnebago. Charlotte. Charlotte. And I think that the temporal restriction of three years is reasonable because the way that these places build their businesses up is they take in students from families that have learned there before, from just general advertising, and the value that they build up is these kids go there and they continue on for many years. So it takes a long time to build up a client base. So that's why there's that non-solicitation of three years because it really is a hard deal to get a group of business, especially in a place like Morris and Winnebago where you don't have that high of a population. Well, let me go back to this, though. If we're talking about whether under these situations three and five years are reasonable, that's really not an appropriate question for a certified question, is it? Because how the heck do we know? Because there's so many facts, and reasonableness is generally what's reasonable under any given circumstances is a question of fact and not normally a question of law, and being resolved by the trier. I agree with you. The Supreme Court said the test whether or not three or five was reasonable was an objective one based on the facts. Correct. It's a very facts-intensive case. But then your objective after you've considered all the facts. Right. The case that I cited was Mahatma v. St. John Hearts Clinic. But, okay, but in the face of a question like this, and it may be an objective, but even if it's objective, you ask this as a question of law out of the blue. So, well, gee, what's the employer's business? What's this? What's that? And I don't think a certified question is a place for us to resolve an issue because if the guy's flipping hamburgers at McDonald's, that's one thing. If he's been working for somebody and trained and has specialized clientele, that's another. And so to answer that question in a vacuum, which is what we're supposed to do, we're not here to answer certified questions based on the facts of a particular case. Because that is not the way even the question is phrased on the facts of the case. And I agree. It's not the place for a factual situation. I think the intent of the certified questions was the two-step. One is the less than three years or less than five years actually setting up a limit. And the decision on that, if no limit, you move on to you've got a thing with that language in it with no limit. Is that enforceable? I think that's probably what the question we're trying to get. Answer my question. Thank you. Thank you, Counselor. Counselor? Well, it's time for me to follow my story about how I drafted the certified questions. If I had to do it over again, I'd put two, number one. So if you look at number two, I'm asking a question that I do think is appropriate. It's fairly, I think we all know what we're talking about. And the answer to number two answers number one, doesn't it? Yeah, it's meant to follow. And if you actually read my brief, I think realizing after the fact, as my wife says, I've overthought this as well. I actually addressed the second question first in the brief. Things have a way of evolving. Your mind doesn't go along. But really what the intent is, is if you find that not less than three in five years is indefinite or uncertain, then is that indefinite or temporally uncertain interpretation compliant with the rule of reason test? And the reason I cited reliable fire is the governing test. No, wait a minute. If it is uncertain, the ball game's over, isn't it? Is there anything more? We don't go whether or not it's reasonable in your line of business geographically or solicitation. Right. And it's supposed to follow. The first question is supposed to follow the second by saying if you answer no, then you almost have to answer the second, the other question, no as well. Because there's no case authority in Illinois that says a temporally unlimited non-competence enforcement. Is enforceable. So it's over at that point. But what if we were to hold the other way? The question still remains, though you want to say number one should really be number two, the question still remains, is that really a certifiable question the court of review can answer? Okay. So let me see if this answers. If you answer number two, yes, then I lose. Because as Justice Schmidt said, if you say this really means three years, then what it goes back to the circuit court for is fact-finding is in this particular set of facts, given her position, the nature of the business, the protectable interest at stake, the language of the agreement, is it reasonable under reliable fire? So you've lost the battle, not the war. Not necessarily the war, right? And then you go back and go through all these factual issues and what have you. But if, hypothetically, we would answer question number two, yes, then we would probably say in light of that we can't answer question number one. Well, if I were you, I would say I can't consider number one. It really is the rule of law. Well, that's what I meant. So I'm not any more artful than you were. And again, I'm addressing the brief as two precedes one. That's the way it's meant to flow in the reasoning. So I think if number two is answered yes and you don't get to number one, it really would be inappropriate to consider the nature of the business and all the interests at stake at this point in the process. We still have substantive arguments we would make, factually and legally, but those can't be addressed here in this procedural context. So I apologize for the order. I wish I had done it differently now, but I hope I've explained where we stand. Where everything's in a state of flux. So help us out if you were to summarize the one issue that really is dispositive here, the less than language. To summarize, it's a basic application of contract construction principles that are unique to this area of law. Strictly construed as the drafter and the due to resolve in favor, Like insurance contracts. Well, plainly at four quarters of the agreement. I mean, it really depends on that argument. It also depends on the finding that at the inception, the agreement was not an enforceable agreement because it had no stated definite durational limit at the time of assignment. Those are the pillars of my argument, and I think I hope I've expressed it. And because of the use of the language, not the less than. Have you seen any restrictive covenant case that had two time periods? Normally it's the inverse. So here you have a non-solicitation which is narrower. You usually see that to be longer because it doesn't impose as great of a restraint, whereas the broader non-compete usually would be shorter because it restricts more activity. Here it's actually flipped, which creates a little bit of an issue for applying it because now you're saying, well, you can't compete, but you could do some things that are competitive. How do you interpret that? I mean, there are cases where you just have a one-year non-solicitation and a six-month non-compete, for instance. That's fairly normal to see in our practice. Here I had the opposite of three and five, where the longer one is that non-compete is unusual. If there are no further questions, I thank the Court for its time and consideration. I thank you both for your arguments in this case. We will now keep this case under advisement, take a break for our panel change.